UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-81384-ROSENBERG

RONALD ITRI and
MARIA ITRI,

    Plaintiffs/Counter-Defendants,

v.

JONES FOSTER P.A. and
THEODORE KYPREOS, ESQ.,
    Defendants/Counter-Plaintiffs.
_____/

**DEFENDANTS/COUNTER-PLAINTIFFS'
MOTION FOR FINAL SUMMARY JUDGMENT
AND INCORPORATED MEMORANDUM OF LAW**

Defendants/Counter-Plaintiffs, JONES FOSTER P.A. ("Jones Foster") and THEODORE KYPREOS, ESQ ("Kypreos," and collectively with Jones Foster, "Defendants"), through undersigned and pursuant to Fed. R. Civ. P. 56 and S.D.Fla. Local Rule 56.1, file their Motion for Final Summary Judgment on all claims by Plaintiff/Counter-Defendants, RONALD ITRI ("Ronald") and MARIA ITRI ("Maria," and collectively with Ronald, "Plaintiffs") against Defendants, and all claims by Defendants against Plaintiffs.

**I.**     **INTRODUCTION**

This professional negligence action arises from legal services Defendants provided to Plaintiffs in a trust litigation in Palm Beach County, Florida, captioned *In re E. Stacey Stevenson Maravell*, 15th Circuit Case No. 50-2016-CP-001153-XXXX-MB (the "Underlying Case"). Plaintiffs are Massachusetts residents and were trustees of a trust established by Maria's mother, the Stacey Maravell Trust ("Trust"). The sole asset of the Trust was a condominium in Palm Beach, Florida, owned by Maria's mother, Stacey Maravell ("Stacey"), and Plaintiffs, as trustees,

were defending efforts to force them to transfer the property to Maria's mother's husband, Charles Maravell ("Charles") and, after Charles' death, to Charles' Estate ("Estate").

Plaintiffs retained Jones Foster, a well-established law firm in Palm Beach County Florida, and Kypreos, a shareholder who focuses on probate and trust matters, to defend the Underlying Case, including causing the transfer of the property from the Trust to Plaintiffs and to seek recovery of the costs expended in "carrying" the condominium.

Defendants were confronted with issues complicating the determination of who was entitled to the condominium including: the validity of a "Fourth Amendment" to the Trust and circumstances surrounding Stacey's death.  During representation of Plaintiffs, Defendants served written discovery, took depositions, and engaged in motions practice including a motion to recover "carrying costs" expended by Plaintiffs regardless of the disposition of the condominium. Defendants also provided status updates and guidance to Plaintiffs on the viability of the different litigation strategies.

Defendants' representation was hampered by Ronald's insistence that communications occur in writing (using "pen and paper," not e-mail) and Ronald's efforts to direct the litigation strategy (Ronald was an attorney admitted in Massachusetts).  Ultimately, Defendants filed two Motions to Withdraw; the first of which was abandoned and the second of which was granted, by which time Plaintiffs owed Defendants $128,118.49 in attorneys' fees and costs.

After Defendants withdrew, Plaintiffs retained Plaintiffs' counsel in this case, Thomas Gruseck, Esq., who settled the Underlying Litigation.  A year and half later, Plaintiffs filed this professional negligence action.  However, the undisputed record evidence is that Defendants neither breached any duty, nor was their conduct the proximate cause of any alleged damage. Moreover, Defendants' expert, Eric Virgil, Esq., opined that Defendants did not breach any duties

to the Plaintiffs or deviate from the standard of case. Plaintiffs have no expert. Therefore, summary judgment is proper on Counts I and II. Moreover, because the record evidence is that Defendants provided the legal services set forth on their invoices and Plaintiffs acknowledge the services were provided, summary judgment is proper on Defendants' counterclaims.

## II.     SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." As explained in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986):

> By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there will be no *genuine* issue of material fact.

*Id.* at 247-48. A Court in the Southern District explained the standard as follows:

> An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. It is 'material" if it might affect the outcome of the case under the governing law. In addition, when considering a motion for summary judgment, the Court is required to view the evidence in the light most favorable to the non-moving party.

*Margolis v. Pub. Health Tr. Of Miami-Dade Cy.,* 89 F. Supp. 3d 1343, 1348 (S.D. Fla. 2015) (quoting *Anderson,* 477 U.S. 242 at 247-48).

The movant bears the burden of proof and must establish all essential elements of the claim or defense to obtain summary judgment. *Margolis*, 89 F. Supp. 3d at 1348 (citing *U.S. v. Four Parcels of Real Prop. in Greene & Tuscaloosa Counties,* 941 F.2d 1428, 1438 (11th Cir. 1991)). The "moving party may discharge its burden ... by showing the Court that 'there is an absence of evidence to support the nonmoving party's case.'" *Margolis*, 89 F. Supp. 3d at 1349. The burden then shifts to the non-movant to cite "to particular parts of materials in the record" or show "that

the materials cited do not establish the absence or presence of a genuine dispute." *Id.* (citing Fed. R. Civ. P. 56(c)(1)). "Summary judgment is appropriate when there is no dispute as to any material fact and only questions of law remain. *Id.*

### III. LEGAL ARGUMENT

#### A. DEFENDANTS DID NOT BREACH ANY DUTIES OR DEVIATE FROM THE STANDARD OF CARE

Under Florida law, a plaintiff bringing a legal malpractice claim must demonstrate: (1) the attorney's employment; (2) the attorney's neglect of a reasonable duty; and (3) the attorney's negligence resulted in and was the proximate cause of a loss suffered by the plaintiff. *USA Interactive v. Dow Lohnes & Albertson, P.L.L.C.*, 328 F. Supp. 2d 1294, 1308 (M.D. Fla. 2004). An attorney must have the knowledge and skill to confront the circumstances of each case. *Jones v. Law Firm of Hill & Ponton*, 223 F. Supp. 2d 1284, 1287 (M.D. Fla. 2002).

Defendants provided exceptional legal services in the Underlying Litigation. Among other things, Defendants successfully defended the Estate's First Motion for Summary Judgment and Motion in Limine regarding the admissibility of the Fourth Amendment to the Trust. *See*, Defendants' Statement of Material Undisputed Facts in Support of Defendants' Motion for Summary Judgment ("SoMF"), ¶ 30. In fact, Mr. Wright, counsel for the Estate, believed Defendants succeeded on every motion in the Underlying Litigation and "absolutely" did a fair job defending that case. *See*, SoMF, ¶ 31. Mr. Wright also testified that there was no merit to Plaintiff's claims in the Underlying Case. *See*, SoMF, ¶ 32.

On May 6, 2020, Defendants filed a Motion to Sell Real Property and, after the condominium was sold, filed a Motion to Release Escrowed Funds on October 25, 2021, seeking the release of escrowed funds for Plaintiffs' carrying costs in maintaining the condominium and for costs and fees incurred as trustees of the Trust. *See*, SoMF, ¶¶ 33-35. Unfortunately, Plaintiffs settled the Underlying Case before the Motion to Release Escrowed Funds was heard. *See*, SoMF,

¶ 43.  Plaintiffs' counsel, Mr. Gruseck, believed Plaintiffs would have been successful on that motion. *See* SoMF, ¶ 42.

By successfully defending the Estate's motions and putting Plaintiffs in a position to recover fees and costs, Defendants' provided competent services in the Underlying Case.

While there are no disputed facts regarding the adequacy of Defendants' legal services, Florida Courts have held that an expert's affidavit may be sufficient to establish a lack of deviation from the standard of care for purposes of summary judgment. *Allen v. Lyons & Farrar P.A.*, 4:19CV578-MW/MJF, 2022 WL 11625752, at *6 (N.D. Fla. Sept. 21, 2022) (relying on expert affidavits to grant a defendants' summary judgment expert after plaintiff failed to disclose a legal standard of care expert).  Notably, Defendants disclosed Mr. Virgil as their expert, and he opines:

> a. Defendants strategy and decisions regarding the discovery conducted in the Underlying Case were reasonable under the circumstances.  In that regard, Defendants did not need all of the discovery that was demanded by Plaintiffs to make the legal arguments necessary to defend against the plaintiff's claims in the Underlying Case, including seeking to have the Fourth Amendment to the Trust deemed invalid.
>
> b. Causation in this case is lacking based on Defendants' efforts in the Underlying Case as well as what appears to be regular written communications with Plaintiffs regarding the status of the case.
>
> c. Defendants were forced to withdraw based on Plaintiffs' conduct, including Plaintiffs' unwillingness to communicate by telephone and Plaintiffs' insistence on how discovery should proceed, which appears on occasion to be contrary to Florida law.
>
> d. Plaintiffs were provided with sufficient/ample time from when the Court granted Defendants' withdrawal to retain successor counsel but did not do so.

*See*, Declaration of Eric Virgil, Esq. ("Virgil Dec.," attached as "Exhibit A").  Plaintiffs do not have an expert. There is no evidence to support Plaintiffs' allegations that Defendants breached

5

duties, or deviated from the standard of care in the Underlying Case. Therefore, summary judgment is proper on Counts I and II.

### B. PLAINTIFFS' FAILURE TO DISCLOSE A STANDARD OF CARE EXPERT BARS THEIR LEGAL MALPRACTICE CLAIMS

Plaintiffs' failure to disclose a standard of care expert prevents them from establishing Defendants' breach or deviation from the standard of care. Pursuant to the December 21, 2023 Order Setting Status Conference, Calendar Call, Pretrial Deadlines, And Trial Date, Order Of Requirements, And Order Of Reference To Mediation [ECF No. 10], this case is set for a jury trial on November 4, 2024, and expert disclosures were due by May 6, 2024, with rebuttal experts to be disclosed by June 5, 2024. Defendants timely disclosed Mr. Virgil as their standard of care expert and he opined that Defendants' strategy and decisions in the Underlying Case were reasonable. *See*, Virgil Dec. As noted, Mr. Virgil will also opine that causation is lacking based on the underlying facts, Defendants' efforts in the Underlying Case, and the communications with Plaintiffs regarding the status of the Underlying Case. *See*, Virgil Dec.

Because lay jurors have difficulty understanding the standard of care for a prudent attorney faced with similar circumstances, Florida Courts generally require a plaintiff to establish the neglect of duty through expert testimony. *See*, *Evans v. McDonald*, 313 Fed. Appx. 256, 258 (11th Cir. 2009). An exception, which is inapplicable here, applies when neglect is so clear as to fall within the common understanding of a juror. *Id.*, (citing *Willage v. Law Offices of Wallace and Breslow, P.A.,* 415 So. 2d 767 (Fla. 3d DCA 1982)). *See*, *Anderson v. Steven R. Andrews, P.A.*, 692 So. 2d 237, 242 (Fla. 1st DCA 1997) (neglect to file a notice of appearance was clear on the face of the record); G*alloway v. Law Offices of Merkle, Bright & Sullivan, P.A*., 596 So. 2d 1205 (Fla. 4th DCA 1992) (negligence in failing to file suit within the statute of limitations period was clear).

6

Legal malpractice arising out of criticized legal strategy requires expert testimony supporting those claims. *See*, *Allen v. Lyons & Farrar P.A.*, 4:19CV578-MW/MJF, 2022 WL 11625752 (N.D. Fla. Sept. 21, 2022). As the Northern District of Florida Court explained:

> It is not obvious to this Court that Defendants' failure to do what Plaintiff says they should have done breaches their duties to Plaintiff, so there is no way this could be obvious to a layperson. Instead, a jury needs to hear expert testimony to delineate the standard of care with respect to Defendants' efforts investigating and litigating Plaintiff's… claim.

*Id.* at 2022 WL 11625752, at *6

Plaintiffs' allegations that Defendants' discovery strategy deviated from the standard of care is not within the knowledge of lay jurors, and breach cannot be established without an expert. Due to the failure to disclose an expert, Plaintiffs lack evidence at trial necessary to establish that Defendants neglected a duty – a necessary element of the legal malpractice claim – and Plaintiffs' legal malpractice claims fail. Therefore, summary judgment is proper on Counts I and II.

## C. DEFENDANTS' ACTS OR OMISSIONS WERE NOT THE PROXIMATE CAUSE OF DAMAGE

Summary judgment is proper because Plaintiffs cannot establish proximate – or "but for" – cause of their purported damage. In a legal malpractice suit, proof that the attorney's negligence proximately caused the client's harm is necessary. *Jones*, 223 F. Supp. 2d at 1287. In Florida, the

> proximate cause of an injury is that cause which, in the natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred.

*Pope v. Pinkerton Hays Lumber Co.*, 120 So. 2d 227, 231 (Fla. 1st DCA 1960). Also, negligence actions require proof that the negligence probably caused the plaintiffs injury. *Proto v. Graham*, 788 So. 2d 393, 396 (Fla. 5th DCA 2001) (citing *Gooding v. Univ. Hosp. Building, Inc.*, 445 So. 2d 1015, 1018 (Fla. 1984)).

Proximate cause generally presents a question for the trier of fact. *See*, *Dep't of Trans. v. Anglin*, 502 So. 2d 896, 898 (Fla. 1987) (citation omitted). Nonetheless, when, as here, reasonable people cannot differ, proximate cause becomes a question of law. *Anglin*, 502 So. 2d at 898; *See also*, *USA Interactive v. Dow Lohnes & Albertson, P.L.L.C.*, 328 F. Supp. 2d 1294, 1313–14 (M.D. Fla. 2004) (summary judgment granted in a legal malpractice claim, with the Court concluding that the plaintiff did not proffer enough evidence to establish that the attorney-defendants were the "but for" cause of plaintiff's damages). As the Florida Supreme Court explained:

> A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.

*Gooding*, 445 So. 2d at 1018 (citing *Prosser*, Law of Torts § 41 (4th ed. 1971)).

    a. **VALIDITY OF THE FOURTH AMENDMENT TO THE TRUST**

A defense in the Underlying Case was that Stacey revoked the Fourth Amendment and, therefore, it had no effect. This was significant because, in Florida, a presumption of revocation arises when an original estate planning document cannot be located and there is an intent to revoke. *See*, *In re Estate of Carlton*, 276 So. 2d 832, 833 (Fla. 1973); *In re Estate of Parson*, 416 So. 2d 513, 517 (Fla. 4th DCA 1982).

Notably, the Estate's argument in opposition to the presumption was that the Trust provided that revocation of the Trust or its amendments must be in writing and signed by Stacey. *See*, SoMF, ¶ 4. Notably, no signed document revoking the Fourth Amendment was ever produced. In the Underlying Case, Charles Weiss, Esq., Stacey and Charles' estate planning attorney, testified that he: (i) drafted the Fourth Amendment; (ii) mailed it to Stacey; and (iii) only received a copy of that Amendment. *See*, SoMF, ¶ 9, 10.

Mr. Weiss produced a copy of a July 6, 2010 letter approximately two years after execution of the Fourth Amendment, wherein he sent a copy of the Fourth Amendment and asked Stacey to advise if the document no longer reflected her intentions with respect to the devise of the condominium. *See*, SoMF, ¶ 10.  Mr. Weiss did not receive a response. *See*, SoMF, ¶¶ 10.  In this case, Ronald concedes that he has no evidence to contest that the Fourth Amendment was executed, or that the Fourth Amendment misrepresented Stacey's intent, other than conversations he had with Stacey. *See*, SoMF, ¶ 19.  Ronald also admits that the Trust required written revocation. *See*, SoMF, ¶ 4.

Considering the numerous factors supporting the validity of the Fourth Amendment, and with no evidence supporting Plaintiffs' claim that Stacey intended to revoke the Fourth Amendment, Plaintiffs could not rebut Mr. Weiss' testimony regarding Stacey's execution and possession at trial in the Underlying Case.  Consequently, the was nothing Defendants could do via discovery or motion practice to conclusively establish that Stacey intended to revoke the Fourth Amendment.

### b. APPLICATION OF FLORIDA'S SLAYER STATUTE

A second argument by Plaintiffs in the Underlying Case was that Charles intentionally caused Stacey's death and, therefore, waived any rights under the Trust pursuant to Florida's Slayer Statute.  Ronald testified that Charles was a "gentle soul," and he never saw Charles hit Stacey, have violent outbursts, or even curse. *See*, SoMF, ¶ 20.  Ronald believed Charles may have either attacked Stacey or failed to provide assistance after she fell. *See*, SoMF, ¶ 21.  Regardless, Ronald unequivocally admitted that he did not believe Charles had the "requisite intent" to kill Stacey. *See*, SoMF, ¶ 22.

Janice Healey, Stacey and Charles' financial assistant, who spent time with them in the months before Stacey's death, refuted the Slayer argument.  Ms. Healey echoed that Charles was

a peaceful person, and she never witnessed him be violent. *See*, SoMF, ¶ 26. Ms. Healey testified that Charles loved Stacey deeply and, in her opinion, never would have harmed or killed her. *See*, SoMF, ¶ 27.

Critically, § 732.802(1), Fla. Stat., which codifies Florida's Slayer Rule, would only apply to disinherit Charles if the Court, as the trier of fact, determined that he "unlawfully and intentionally kill[ed] or participate[d] in procuring the death" of Stacey – making his state of mind a key issue at trial. In that regard, while murder does form a basis for disinheritance under the law, manslaughter does not. *See*, *Nable v. Godfrey's Estate*, 403 So. 2d 1038 (Fla. 5th DCA 1981).

Based on the evidence in the Underlying Case and Ronald's concession that Charles did not have the "requisite intent" to kill Stacey, Plaintiffs could not have succeeded on the Slayer Statute argument in the Underlying Case.

### c. CHARLES'S DEPOSITION WOULD HAVE HAD NO EFFECT IN THE UNDERLYING CASE

Ronald made clear that the main basis for Plaintiffs' legal malpractice claim in this case is Defendants' failure to depose Charles before he died. *See*, SoMF, ¶ 17. As an initial matter, considering Charles's condition – including having early-stage Alzheimer's disease – it was questionable as to whether he was competent to testify. *See*, SoMF, ¶ 18.

Nevertheless, even if Charles had been deposed, it is speculative that his testimony would have resulted in a different outcome in the Underlying Case. Indeed, unless Charles testified that he either intentionally killed Stacey or that she intentionally revoked the Fourth Amendment – both of which would be contrary to his interest – Charles's deposition would not have affected the the Underlying Case. Furthermore, Ronald was unable to articulate any facts to which Charles could have testified that would have affected the outcome of the Underlying Case. *See*, SoMF, ¶ 23. Nor was Ronald able to express how taking the depositions of Ms. Healey or Charles'

daughter, Constance Guitan, would have changed the outcome of the Underlying Case. *See*, SoMF, ¶¶ 24, 25. Accordingly, Plaintiffs suffered no damages from the failure to depose Charles (or Ms. Healey or Ms. Guitan) in the Underlying Case. Moreover, Charles's testimony would have likely eliminated defenses Plaintiffs sought to use to avoid the Fourth Amendment to the Trust.

Lastly, Mr. Gruseck, Plaintiffs' counsel in this action who also represented them in the Underlying Case, testified that once he was retained, Plaintiffs never intended to take the matter to trial, and the goal was to continue trial or settle. *See*, SoMF, ¶ 40. Moreover, Plaintiffs never even made plans to fly to Florida for the trial. *See*, SoMF, ¶ 41. Therefore, Plaintiffs abandoned any claims against Defendants through Plaintiffs' decision to settle.

### D. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR COUNTERCLAIMS

Defendants are entitled to summary judgment on their counterclaims for the outstanding balance of legal fees and costs incurred in defense of Plaintiffs in the Underlying Case.

"For a breach of contract claim, Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc*., 564 F.3d 1256, 1272 (11th Cir. 2009). Under Florida law, the Court begins by assessing the plain contractual language itself, and where the language is unambiguous, the Court's analysis does not go further. *See*, *Nabbie v. Orlando Outlet Owner, LLC*, 237 So. 3d 463, 466 (Fla. 5th DCA 2018) (citations omitted); Homes & Lands, 598 F. Supp 2d at 1269 (*quoting* Arriaga v. Fla. Pac. Farms, LLC, 305 F.3d 1228, 1246 (11th Cir. 2002)).

"An account stated is a manifestation of assent by debtor and creditor to a stated sum as an accurate computation of an amount due to the creditor." *Park Jensen Bennett LLP v. Brooks*, 17-80973-CIV, 2018 WL 2694584, at *3 (S.D. Fla. May 4, 2018), citing *United Capital Funding Corp. v. New York City Dep't of Educ.*, 457 Fed. Appx. 53, 54-55 (2d Cir. 2012). "[B]elated objections to an account stated are insufficient to raise genuine factual issues warranting denial of

11

summary judgment unless fraud, mistake, or other equitable considerations are shown." *Id.*, citing, *Kramer, Levin, Nessen, Kamin & Frankel v. Aronoff*, 638 F. Supp. 714, 722 (S.D.N.Y. 1986). Objections made once suit is filed are, as a matter of law, not made within a reasonable time. *Id.*

Plaintiffs executed an engagement letter on December 1, 2015, agreeing to pay for the work performed and costs incurred. *See*, SoMF, ¶ 15. Throughout the Underlying Case, Defendants sent invoices for work performed and costs incurred to Plaintiffs. *See,* SoMF, ¶ 44. Plaintiffs never objected to any of the invoices. *See*, SoMF, ¶ 45. Rather, Plaintiffs made insufficient payments towards the balance owed and subsequently stopped paying. *See*, SoMF, ¶ 46. Ronald could not articulate whether the fees incurred were unreasonable besides conclusory statements that Defendants "churned" a profit. *See*, SoMF, ¶¶ 47. However, Ronald could not identify any acts that constituted churning.

Plaintiffs have a balance of $128,118.49 for legal services and costs. *See,* SoMF, ¶¶ 48. Moreover, Plaintiffs do not dispute that there are outstanding legal fees. *See*, SoMF, ¶ 49. As such, no reasonable factfinder can conclude that Plaintiffs did not breach the Engagement Agreement.

Plaintiffs have materially breached the agreement with Defendants by failing to pay for legal services and costs. Accordingly, Defendants should be awarded summary judgment on their claims of Breach of Contract, Quantum Meruit, Account Stated, and Open Account, and for a monetary judgment in the amount of $128,118.49, plus pre-judgment interest and costs.

IV. **CONCLUSION**

Defendants' Motion for Final Summary Judgment should be granted in its entirety. Defendants have shown, as a matter of law, that based on the undisputed material facts before the Court, that Plaintiffs cannot possibly meet each element required for their legal malpractice claims. Without expert testimony, Plaintiffs cannot establish that Defendants breached any duties, or

deviated from the applicable standard of care of a reasonable attorney. Further, Plaintiffs cannot establish that Defendants proximately caused any of Plaintiff's damages, as Plaintiffs abandoned any recovery of their carrying costs and fees incurred as trustees when they settled the Underlying Case prior to trial. Moreover, Plaintiffs cannot articulate any testimony by Charles that would have positively (for Plaintiffs) affected the outcome of the Underlying Case.

Likewise, Defendants are entitled to summary judgment as to their counterclaims for Breach of Contract, Quantum Meruit, Account Stated, and Open Account. There is no dispute that the parties entered into the Engagement Agreement, and that there is an outstanding balance. Accordingly, Defendants' Motion for Final Summary Judgment should be granted in its entirety.

**WHEREFORE,** Defendants/Counter-Plaintiffs, JONES FOSTER P.A. and THEODORE KYPREOS, ESQ., respectfully request an order granting Defendants' Motion for Final Summary Judgment as against Plaintiffs/Counter-Defendants, RONALD ITRI and MARIA ITRI, in its entirety, and for further relief deemed proper.

Dated: August 12, 2024

**SHENDELL & POLLOCK, P.L.**
*Attorneys for Defendants*
2700 North Military Trail - Suite 150
Boca Raton, Florida 33431
Phone: (561) 241-2323
Fax:    (561) 241-2330

By: ____/s/ Seth A. Kolton, Esq.
**Seth A. Kolton, Esq.**
Florida Bar No. 21045
seth@shendellpollock.com
**Matthew A. Tornincasa, Esq.**
Florida Bar No. 0057698
matt@shendellpollock.com
**Ryan M. Blitz, Esq.**
Florida Bar No. 1033386
ryan@shendellpollock.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of August, 2024, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the following Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

By: /s/ Seth A. Kolton, Esq.
Seth A. Kolton, Esq.
Florida Bar No. 21045
Matthew A. Tornincasa, Esq.
Florida Bar No. 0057698
Ryan M. Blitz, Esq.
Florida Bar No. 1033386
**SHENDELL & POLLOCK, P.L.**
*Attorneys for Defendants*
2700 North Military Trail - Suite 150
Boca Raton, Florida 33431
Phone: (561) 241-2323
Fax:    (561) 241-2330
seth@shendellpollock.com
matt@shendellpollock.com
ryan@shendellpollock.com
donna@shendellpollock.com
laura@shendellpollock.com
grs@shendellpollock.com

**Service List:**

**Thomas J. Gruseck**
The Law Office of Thomas J. Gruseck, P.A.
500 S. Australian Avenue
Suite 600
West Palm Beach, FL 33401
t.gruseck@gmail.com
*Via email and CM/ECF NEF*